My name is Larry Bagsby. I'm here on behalf of the class victims in this case, which comprise of 78 victims. I'd first like to address the manner in which the district court disposed of the plaintiff's claims on failure to supervise in two categories. One is very straightforward. The last opinion that was issued out of the Eighth Circuit was a mere 18 months ago that dealt specifically with a case factually arising in the same kind of context. The case was S.M. v. Lincoln County. I'm sorry, can you give me the name again? S.M. S.M. v. Lincoln County. And by sheer happenstance, the same events that arise in this case happened in Lincoln County. In Judge Loken's opinion in the S.M. case, which Judge Molloy participated in, Judge Loken referred to it as a no supervision case. In quotes, no supervision. But what he did more carefully was point out that the standard of liability on these municipal entity claims is a very objective one. And that was consistent with another decision of this court in Walton in calendar year 2014. I'll let you do the 2014 case, but before you leave S.M., the opinion, you're quite correct, is very well written. On page 588, it implies that the jury got the wrong jury instruction. What Judge Loken pointed out regarding the jury instruction issue is counsel on behalf of the entity, the county, had not objected to, I believe, the third element of the claim. And Judge Loken, I think he uses this language, that arguably the failure to object failed to address how stringent the standard is, but then did not go on to clarify because the issue is not before us. So as a matter of law, that kind of undercuts the S&M authority, right? I would still disagree because you would just simply go back to Walton. I will let you get to Walton. One other thing on S&M, there was prior evidence the employee was engaging in misconduct, right? Only to the subordinates, none to the supervisor who was the named, or the sheriff of Lincoln County. That's why I point out and emphasize that Judge Loken in the S&M decision called it a no supervision case. And that's exactly what it was. The supervisor had no actual notice, no actual knowledge, which is what the defendants all suit in their official capacity in this case are trying to claim. Now you can go back to your 2014 case. In Walton, the legal claim that was before the court was against the individual. And the court was very careful in analyzing what standards and how they're going to apply, whether it's an individual defendant where you have issues of qualified immunity or you have entity liability. And Walton made it very clear that when you are going after an individual, the standard of liability imposes a subjective actual notice awareness of the risk. It also made clear from the Supreme Court decisions in Canton and Connick that when it comes to the entity's liability, it is going to be an objective, no actual notice requirement. It is a standard, again in the context of entity liability, of whether or not the policymakers had avoided or failed to appreciate a known risk. Actual notice is not required. And that's exactly what was held in S&M. Do you believe that the standard is really deliberate indifference after all is said and done? Deliberate indifference applies in both contexts, individual or entity. So it is still the standard, deliberate indifference? It is. But deliberate indifference, how it is interpreted, varies based upon the individual defendant and whether or not it's entity liability. Now, the district court, in its opinion, though citing the S&M decision, then meandered off into the language that is used in a subjective analysis, language like malice, evil motive. Shocks the conscience. That language is what you see when you start reading the individual liability cases for deliberate indifference. You do not see that language in an objective analysis that has been clearly analyzed from the Supreme Court in Canton and Connick all the way up to Walton and S&M out of this circuit. Do you have a substantive due process claim? Correct. Well, shock the conscience is part of substantive due process claims, aren't they? Not when it comes to the entity liability. You do not see that in Walton when it talks about an entity's liability. You do not see that in Judge Loken's opinion. What about the Supreme Court decisions? Don't the Supreme Court say that to establish any, I'm basically quoting the Supreme Court, any substantive due process violation, plainties must show that the behavior of the government official was egregious, so outrageous that it may fairly be said to shock the contemporary conscience. That's the county of Sacramento case 1998. They act like it's in every claim. Shock the conscience is in every claim. I'm not familiar with that particular case. But as far as Canton and Connick go, you do not see that being applied when it comes to entity liability. You certainly don't see it applied in the controlling cases of this circuit, which are Walton and S&M. Now, I've essentially got an even if argument here. The district court said that the district had no notice given what the evidence was presented. And I think what was fatal error in that analysis is two pieces of evidence. The actions of the defendant, Hanson, in this case, occurred inclusively between the years of 2007 and 2011. One piece of evidence that we had and have in the record is a U.S. Department of Education study that was published nationwide on the DOE website that dealt with sexual predators, specifically in the context of schools and educators. That study found that between grades, kindergarten and the 12th grade, 4.5 million students have been the victims. 4.5 million. The district court accepted as true, at a summary judgment posture, the district defendant's denial that any of them were aware of the study. That is not obviously how the strictures of Rule 56 work. That evidence should have been construed most favorably to us and not merely accepting a defendant's denial. If the defendants want to try to argue the interpretation of those statistics, that's totally fair game. But again, the strictures of Rule 56 in the summary judgment stage, that evidence is true. That evidence is overwhelming. I don't care if each of these individual defendants want to say they were unaware of it. I suppose you could wish that, you could say that. But the role of a district court judge is to accept the evidence as true. The other very important fact that the district court gave very short shrift to was the way this district had set up this camp and the manner in which they had people in different positions who they believed were going to act as supervisors. This camp had operated beginning in 1980. The current superintendent of the school district has been there 35 years, and I quote him in an exchange I had with him in the reply brief. And I asked him, explain this to me, how you believe security was set up inside the barracks itself at night. And we go back and forth in that exchange that's contained in the reply brief of me asking, you had a one adult per cabin rule. Explain to me why you had that. And he denied that. And he said, he kept using the phrase camp counselors. Camp counselors were actually the teenagers, A plus students, 16 and 17 years old, were assigned to the barracks. And the reason this becomes as important is because that is what the superintendent, head man, the chief, has set this system up where he believes that these teenage 16-year-olds are going to act with the same quality and maturity of another true adult inside the barracks to report if anything goes wrong. And the reason I laid that foundation is because, again, what Hansen does is between 2007, 2011, and in calendar year 2006, one of those camp counselors who was assigned to the barracks of Matthew Hansen, this is one year before Hansen starts all his criminal acts. He, unexpectedly, because these camp counselors are not supposed to be in the barracks at night. Other evidence, if I have to go down that path. But anyway, this student, David Ring, walks into the cabin, sees Hansen on a top bunk bed, alone, with a fifth grade student, and they're the only ones in the barracks. Hansen jumps out of the top and says, or just starts acting startled. And the reason I emphasize this so strongly is that was the very security system that this superintendent set up and the way it operated for 35 years was to rely on these kids to have the maturity. So going back to my even-if argument, if I'm going to be held to some kind of actual notice standard for the entity's liability, the very security system they set up failed. Would it be fair to say that they also had a policy, right? Criminal background checks, and they had certain standards that they wanted the counselors and the adults to abide by, right? Correct. So is it an accurate assessment to say that having the A-plus student was the security system? You were saying that that was the way they were going to secure it? As far as it came to the human element. If there was a human element in the security system to report any misbehavior out at the camp inside of those barracks, what they built and what they relied on were these A-plus students. So my point is, even if I get held to an actual notice standard, they had actual notice a full year before Hanson starts committing his acts. I thought that that young person didn't say anything until after all of this had been filed. He did not. He did not report it until 2012. So is that actual notice? If that's the system they set up, I mean, and I don't mean this as a demeaning example, but if you're setting up the eyes and ears of the security system with blind people and deaf people who are not going to have the maturity or the ability to observe and report, that's the system you set up. If you're going to treat 16-year-olds like adults and stick them in those barracks and expect them to be reporting with the same maturity of an adult, that is your fault. That's my point. Well, I mean, at the end of the day, you have not pointed to what I would call any red flags that they should have noticed something was happening, which is more the SM case. But based upon your argument and your brief, as I understand it, and your argument about an objective standard is you're saying that as a matter of law, putting one adult teacher in an overnight camp is going to be liability. Is that what your argument is? I mean, because I can't figure out anything else of your argument, quite frankly. As a matter of law, they should have known that this was a high risk and, therefore, don't do it. I would add a few more facts. What are the facts? In the way you portrayed it. Well, they know the camp is five days, four nights. It's overnight. It's overnight. I understand that. They understand that nudity is going to happen. I don't know if it makes any difference if it's one night or four nights, but, yeah, it's overnight. Because they know nudity is going to happen. They know what? Nudity. These kids are going to have to shower. I mean, this is not a modern day facility where you have the ability to have privacy when you're showering. These cabins were built in 1933 during the FDR administration. They look like it. That's how they're built. That's how they function. It's a very spartan existence. It's barracks, urinals, toilets, and one room for the counselor. That's it. But my other point, additional facts that I'd bring up is they violated their own district policy by allowing the video recording, the equipment to come into the barracks in violation of their own policy because they knew that was going to be. They knew it was going to be something that would have violated their own policy, but they were just oblivious to it. It goes back to the issue of how can you say that you're going to allow cameras to be brought in. You know that nudity is going to exist. You set up this security system with these teenagers, and you also are just going to simply deny you're unaware of a Department of Education report that applies to the whole country. You're into your rebuttal. You're aware. Sure. I would like to take my break. Thank you. Thank you. Mr. Reynolds. Good morning, your honors. May it please the court. It appears that the appellant's central argument with respect to point one is twofold. One, obviously there was an attack on the challenge that opposing counsel suggests that Judge Ross used in ruling on a summary judgment and then presumably had the right legal standard been followed, then necessarily there would have been a genuine issue of material fact thus precluding summary judgment. Neither of those arguments hold up under review. The first argument with respect to the legal standard, it's very clear Judge Ross was aware of both the subjective standard and the objective standard, I think, as mentioned by opposing counsel. In Judge Ross's order, he certainly cited the SM Lincoln County case. Specifically on page 19 of his order, he actually referenced the implied notice that sometimes might be sufficient to establish deliberate indifference. The crux of apparently this erroneous standard argument would be somehow that Judge Ross only looked at actual notice. That's completely incorrect. Judge Ross didn't look at solely actual notice. He looked at both of those issues. The real problem is that there simply was not and is not, there's no evidence of either actual notice or implied notice that this incident was going to occur, that a constitutional violation, mind you, was going to occur. What hasn't been stated yet is that, of course, this camp has been in existence for over 30 years. You're talking about thousands of students, hundreds of teachers. But you didn't introduce any evidence, summary judgment, right? Yes, Your Honor. You didn't counter with any real evidence of what happened in the other 30 years. I can't believe you had evidence like that, right? We put in that this was the first time this had ever happened. Well, yeah, but you can't really prove a negative, counsel. Proceed. I agree, Your Honor, that it's challenging to prove a negative. But the key thing, and I think this was pointed out before, was that when you're addressing Section 1983 liability, there normally are some type of danger signals out there, as the court put it, or red flags, to let the entity know that something needs to be done different. And that's what's missing here. Counsel, the Supreme Court always says known or obvious consequence, known or obvious. You know the one I'm referring to, I bet. Okay, why isn't this obvious? And I would add that it has to be so obvious. And that goes into the question that comes back to this 30 years. If it was so obvious that this was going to happen, why hadn't it happened before? And I think that, in particular, the one thing to remember here, too, is that we are talking about an educational institution. And we're talking about teachers. There's a myriad of examples where teachers are going to be necessarily alone with students from time to time. If there's nothing unique about this that would make it so obvious that a constitutional violation would occur that would distinguish it from any other time when you have teachers alone with students. This is a bit different than being alone in a classroom in a school. This is a cabin. It's, I suppose, in the woods somewhere. It is different than just any other time you're alone. It is a 24-hour a day, as counsel notes, showering, changing clothes, sleeping, doing all the things that you need to do. That's fair. It's more in-depth. But I would suggest, for example, in elementary school, you'll have teachers go into a bathroom and help a student alone in a bathroom. You'll have PE coaches that have to be alone sometimes with students. So I do agree that it is more in-depth, but I raise the issue because a holding that this would be so obvious would have really strong ramifications for our educational system. And I think it would go back and violate, essentially, the tenets of what you're looking at in Monell and City of Canton where the Supreme Court was concerned that we don't let this devolve to a scenario where it's responding at Superior Court, that there has to be more to it. That it's a rigorous standard, not merely that if somebody has violated the law or somebody's constitutional rights that there's always liability. And so I don't agree that this is so obvious, and I don't think that there was evidence to support that. With respect to the notice issue, opposing counsel brought up two points. One, the incident with David Wren, the camp counselor, who the evidence in this case showed he came in and saw Defendant Hanson act startled. There was no evidence that anything improper was going on, that somebody was in a state of undress or that there was inappropriate communications or that there was any video equipment. In hindsight, yes, it may look suspicious. But at the time, it's just equally true to say that it simply looked odd. But most importantly, as this court pointed out, Mr. Wren didn't tell anybody. He didn't tell his mom. He didn't tell anybody. It came out after Mr. Hanson was arrested, and it hit the news cycle, and there was a criminal investigation. He then said, well, maybe I should tell my mom, and his mom called the school district, and the school district passed that information along. With respect to this Department of Education study, I think that opposing counsel's statement that there's 4.5 million students who are affected through some type of sexual misconduct illustrates the danger of simply relying on any type of statistical evidence without some further context to explain those statistics. For example, 4.5 million students over the course of K through 12. How many millions of students went through that same time period in our entire country that had no evidence? Did you put that in the record? What's that? Did you put that in the record? I did raise in the argument before the trial court that there was no expert testimony to explain the statistic, which by itself doesn't tell us anything. Well, it's from a government report, so they kind of get it in, and then you can kind of get in. You know how many students were around that period of time by doing some math, but go ahead. I think that's a fair point. The issue that I pointed out was that there's nothing in that report that actually shows the statistical probability for child pornography as opposed to general sexual misconduct. So what you have is a very over-inclusive, bald statistic put before the trial court, and it was not convincing to Judge Ross, nor should it be. What did you say about pornography? I said that I didn't see anything in the report that specifically dealt with the incident of child pornography as opposed to generic sexual misconduct, which could include and did include sexual harassment, all these other types of conduct. It's not explained to anybody. Because you're saying your incident is child pornography. Exactly. Okay. Finally, there was no evidence that anybody at the district was aware of that. They have to come forth with somebody having notice of this, and it simply didn't exist. So the bottom line is that there simply isn't notice sufficient to establish the deliberate indifference. And I think it's important to remember that deliberate indifference means that you have to be deliberately indifferent to something. It's just not by itself. What are they being deliberately indifferent to? This was the first incident of child pornography at this camp in 30 years. They're not being deliberately indifferent to any type of prior constitutional violation. They're not being deliberately indifferent to any notice of inadequacies in their policies. That's just simply there's no evidence of that. We did not talk about point two in opposing counsel's brief with respect to the issue of default judgment. Opposing counsel has raised on appeal a request that this court reverse Judge Ross' denial of an entry of default judgment against the school district with respect to count one. This was a multi-count petition, but a lot of the counts ultimately were disposed of. Some of them were dismissed voluntarily. What's been appealed in point one were counts three, five, and seven. Judge Ross, however, ruled on all the remaining counts in this case, including count one and count two. Count one, you'll recall, was a section 1983 claim not based on a constitutional violation, rather, but a predicate statutory violation. In that case, the Child Abuse Victims' Rights Act. Judge Ross reviewed that as part of his motion for summary judgment and entered judgment in our favor. Importantly, that has not been appealed. They did not raise any point of error with Judge Ross on count one. Before this court is a substantive ruling in favor of the school district. Yet, according to point two, they would have this court reverse a substantive ruling in favor of the district in favor of a procedural technicality. That goes against the very grain of the essence of a strong judicial preference against default judgments because they do not allow a ruling on the merits and the courts favor rulings on the merits rather than procedural technicalities. As Judge Ross pointed out, the district filed an answer every step of the way. The very first complaint in this case, there were only two defendants. Opposing counsel had named the school district explicitly, Fort Zumwalt School District. And the other defendant was Matthew Hansen. In the counts, count one at that time was described as against Matthew Hansen only. And in the wherefore clause, specifically only sought relief against defendant Hansen. Notwithstanding that fact, the district not only filed an answer to the counts directed towards it. It also fully responded to all the predicate facts that would have been incorporated by reference into count one. And then further responded to count one saying that to the extent that this can be construed to be against the school district, we're also denying liability. That stayed the same when appellants amended their complaint the first time. Again, amended complaint, answer filed by the school district. And it stayed the same with respect to the second amended complaint. Although by the time we get to the second amended complaint, something unusual has happened. Opposing counsel has dropped Fort Zumwalt School District as a defendant that's actually listed as a defendant. And replaced the defendant with seven different administrators of the school district in both their individual and official capacity. I'm not sure exactly the reason to do that when you already have the entity. But I find it interesting that... Did the district answer this last amended complaint? Absolutely. The district answered it as the district, so it's proxy answer, right? That's exactly right, Your Honor. And again, same pattern. They also addressed count one. So when this issue was brought up before Judge Ross, Judge Ross said, no, I'm not going to grant a default judgment against the district. Opposing counsel puts a lot of discussion in their brief about the Banks v. Slay case. And, of course, the distinguishing factor there is in the Banks case, which was against a board of police commissioners. The board sat by and watched it unfold. Not only did they not enter an answer in that case, but even after... I may be confused. I thought it was Judge Weber. But after he set a hearing to decide whether or not to enter a default judgment, they send a lawyer. But nobody said anything on behalf of the board. And that was sufficient for the court to conclude that, well, nobody's actually in here defending that entity. That couldn't be further from the truth in this situation for us. The school district has been defended from day one and is fully answered. So we're asking that that count be denied. This was certified as a class for purposes of liability only, right? So did the district concede that? There didn't seem to be much analysis from the court on that. How did that unfold? Thank you, Your Honor. That unfolded through consent, through mutual consent between the plaintiff and defense at the time. The thinking being that there certainly would be a lot of troubling issues on damages, which would generally preclude class certification. However, there was some logic in making sure that the liability issue, which seemed to have a lot of common questions and common answers, could be resolved. And in hindsight, it turned out to be an effective way of disposing this matter because now the district is not facing a myriad of individual suits by subsequent plaintiffs, should the court affirm the summary judgment. Did I answer your question, Your Honor? I ran through my time a little bit quickly. I am a fast talker. No, no, you're fine. We appreciate it. Let's see if there are questions. Seeing no questions, thank you for your argument. Thank you. And we're back to Mr. Bagsby. Going back to the fair to supervise claim, counsel for the school district just characterized what the fundamental flaw was of the argument they made to the district court was and how the district court adopted it. John just said you have to be obvious and aware of something. And it's not a vague issue. All the decisions in the failure to supervise claim answer what that is. You have to ignore an obvious risk. You do not have to be aware and have actual knowledge of the risk. But if you are ignoring an obvious risk, that is the standard. And I go with great. You agree it has to be kind of really obvious, right? I'm sorry? You agree. I'm using a country phrase. It has to be really obvious. The Supreme Court always says so obvious. Of the risk. Yes. So obvious. They say so obvious many times. If you know what I'm trying to say. So it has to be really obvious, not just a little bit obvious. What do you think? You think that's wrong or right? Of the risk. Yeah. Of the risk. I would agree. But you can't phrase and pose and posture. The question is, you've got to be aware of something. It's it's simple. A risk. So if you're going to run a school district. With 15 elementary schools. Running three camps a week for five weeks for 35 years in a row. And you're going to stick one adult in there. With these students. When you know they're going to be nudity. And you allow the teacher to take the cameras in there. How can you not put two and two together? What the risk is. How can you say that? At least at the summary judgment posture of this. That you're unaware of a department of education study. In judgment. You pointed out. By asking John. Does the study address child pornography? And I go back to what I was saying earlier. They're free to interpret those statistics. In any manner they want. And argue to a jury. However, they want. The issue is the existence of pedophiles. In schools. What type of pedophile. Is a side issue. Don't don't you have to have some. If if if. Somebody under old says. I haven't read a department of education study. Don't you have to have some evidence. I mean, is it. Is it that obvious that they read every single report. This issue by the department of education. There may be thousands of them. I don't know. We have a federal judicial center. That comes out with the study every week. I don't read them. Was I in most cases. Why is it so obvious that they're aware of this deal. We report. Wouldn't it be a matter of degree. If a student. If. If a study comes out for your profession. It says you've got 4.5 million pedophiles. In your profession. You need to start taking steps. And be aware of it. Isn't that different. Than the normal Missouri lawyers weekly or the Supreme Court. Case summaries. I mean, that's rather attention getter. Just the sheer number 4.5 million pedophiles. Are in our schools all throughout the country. And if you want to parse what type of pedophile. Go ahead. But the problem is you need to acknowledge that pedophiles are there. Thank you for your argument. Case number 18 dash. 2093 is submitted for decision by this court.